No. 25-_____

————————————

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————

EDIE GOLIKOV, individually and
on behalf of all others similarly situated,

*Plaintiffs-Respondents*,

v.

WALMART INC.,

*Defendant-Petitioner*.

————————————

Petition from United States District Court for the Central District of California
Case No. 2:24-cv-08211, Hon. R. Gary Klausner, United States District Judge

————————————

## PETITION FOR PERMISSION TO APPEAL UNDER RULE 23(f)

————————————

James R. Sigel
Jacob M. Harper
Joseph Elie-Meyers
Daniel H. Leigh
Heather F. Canner
DAVIS WRIGHT TREMAINE LLP
350 S. Grand Avenue, 27th Floor
Los Angeles, CA 90017
Telephone: (213) 680-4860
James Sigel@dwt.com

*Attorneys for Defendant-Petitioner Walmart Inc.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant Walmart Inc. ("Walmart") has no parent corporation, and no publicly held company has a 10% or greater ownership interest in Walmart.

Dated: March 13, 2025

/s/ James R. Sigel_____

James R. Sigel

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................1

QUESTIONS PRESENTED.................................................................3

STATEMENT OF THE CASE.................................................................4

    A.    Plaintiff's Claims.................................................................4

    B.    The Class Certification Proceedings ...................................6

    C.    The District Court's Certification Order ...........................9

    D.    Further District Court Proceedings ..................................10

STANDARD OF REVIEW ................................................................10

REASONS FOR GRANTING REVIEW ............................................10

I.    THE DISTRICT COURT MANIFESTLY ERRED IN CERTIFYING A CLASS BASED ON GOLIKOV'S MERE ALLEGATIONS .....................10

    A.    The District Court Manifestly Erred In Concluding That Golikov Established Commonality Through Allegations Alone .....................11

    B.    The District Court Also Manifestly Erred In Concluding Golikov Established Predominance.................................................................14

    C.    The District Court's Errors Implicate Significant Constitutional Standing Concerns.................................................................16

II.    THE DISTRICT COURT'S ACCEPTANCE OF GOLIKOV'S DAMAGES MODEL WAS MANIFEST ERROR.................................................17

    A.    Golikov's Damages Model Bears No Relationship To Her Liability Theory.................................................................18

    B.    Golikov Failed To Adequately Develop Her Damages Model..........20

III.    CONSTRAINTS ON DISCOVERY CANNOT RELIEVE A PLAINTIFF OF HER EVIDENTIARY BURDEN .......................................22

iii

CONCLUSION ....................................................................................24

CERTIFICATE OF COMPLIANCE ....................................................25

# TABLE OF AUTHORITIES

**CASES**

*ABS Ent., Inc. v. CBS Corp.*,
    908 F.3d 405 (9th Cir. 2018) ..........................................................23

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................15

*Archila v. KFC U.S. Props., Inc.*,
    420 F. App'x 667 (9th Cir. 2011) ...................................................23

*Balser v. Hain Celestial Grp., Inc.*,
    640 F. App'x 694 (9th Cir. 2016) .............................................22, 23

*Berger v. Home Depot USA, Inc.*,
    741 F.3d 1061 (9th Cir. 2014) ........................................................11

*Black Lives Matter L.A. v. City of L.A.*,
    113 F.4th 1249 (9th Cir. 2024) .......................................................14

*Bowerman v. Field Asset Servs., Inc.*,
    60 F.4th 459 (9th Cir. 2023) ...........................................................16

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2005) ..........................................................10

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)....................................................................*passim*

*Davidson v. O'Reilly Auto Enters., LLC*,
    968 F.3d 955 (9th Cir. 2020) .........................................2, 14, 16, 23

*Dawar v. Sam's W., Inc., et al.*,
    No. 1:24-cv-09106 (N.D. Ill.)...........................................................5

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ..........................................................12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)......................................................1, 11, 14, 16

*Hawkins v. Walmart, Inc.*,
   No. 24-CV-00374, Doc. 22 (E.D. Cal. Feb. 13, 2025) ..........................................5

*In re Avocado Oil Mktg. & Sales Pracs. Litig. (In re Avocado Oil)*,
   MDL No. 3133, Doc. 38 (J.P.M.L. Nov. 22, 2024) .............................................5

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ......................................................21, 22

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) .................................................................21

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ....................................................................22

*Lab'y Corp. of Am. v. David*,
   No. 24-304, __ S. Ct. __, 2025 WL 288305 (Jan. 24, 2025).............................17

*Lara v. First Nat'l Ins. Co. of Am.*,
   25 F.4th 1134 (9th Cir. 2022) ....................................................................16

*Lytle v. Nutramax Lab'ys, Inc.*,
   114 F.4th 1011 (9th Cir. 2024) ...............................................18, 19, 20, 22

*McConnon v. The Kroger Co.*,
   2024 WL 3941340 (C.D. Cal. June 21, 2024) .....................................................5

*Morrison v. Sovena USA, Inc.*,
   No. 2:24-cv-08144 (C.D. Cal.) ...................................................................5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ..............................................................3, 15

*Smith v. Trader Joes Co., et al.*,
   No. 3:24-cv-06834 (N.D. Cal.) ...................................................................5

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)............................................................................16, 17

*Valdovinos v. Target Corp.*,
   No. 2:24-cv-08572 (C.D. Cal.) ...................................................................5

*Van v. LLR, Inc.*,
    61 F.4th 1053 (9th Cir. 2023) ...............................................15, 16, 17

*Wal-Mart v. Dukes*,
    564 U.S. 338 (2011)...........................................................1, 10, 11, 12

*Ward v. Apple Inc.*,
    784 F. App'x 539 (9th Cir. 2019) ........................................................22

*Weiner v. Snapple Beverage Corp.*,
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)......................................21

*White v. Symetra Assigned Benefits Serv. Co.*,
    104 F.4th 1182 (9th Cir. 2024) ...........................................................11

*Williams v. Warner Music Grp. Corp.*,
    848 F. App'x 284 (9th Cir. 2021) ........................................................22

*Willis v. City of Seattle*,
    943 F.3d 882 (9th Cir. 2019) ..............................................................14

## RULES

Federal Rule of Civil Procedure
    23(a) ...............................................................................................2, 10
    23(a)(2) ...........................................................................................3, 8
    23(b)(2) ...........................................................................................1, 6
    23(b)(3) ......................................................................................passim
    23(f)................................................................................................1, 10

## OTHER AUTHORITIES

Anahad O'Connor and Aaron Steckelbert, "*Why your avocado oil may be fake and contain other cheap oils*" 2024 *The Washington Post*....................4, 12

Green & Wang, *Purity and quality of private labelled avocado oil*, 152 Food Control 109837 (Oct. 2023)...........................................................4, 15

Hilary S. Green & Selina C. Wang, *First report on quality and purity evaluations of avocado oil sold in the US*, 116 Food Control 107328 (Oct. 2020) ...................................................................................4

Defendant Walmart Inc. respectfully petitions under Federal Rule of Civil Procedure 23(f) for permission to appeal an order of the district court certifying classes under Federal Rules of Civil Procedure 23(b)(2) and (3).

## INTRODUCTION

To certify a class, plaintiffs must "actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). And in determining whether a plaintiff has met that burden, district courts must conduct a "rigorous analysis." *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011) (quotation marks omitted). Here, however, the district court granted the plaintiff's motion for class certification—expressly on the basis of her "allegations," not her evidence—after giving Walmart just nine days to prepare its opposition to class certification. The district court's class-certification decision, which simply took the plaintiff's class-certification assertions at face value, flouts this Court's precedents. It merits this Court's review and reversal.

The plaintiff here alleges that Walmart misleadingly sells avocado oil that is adulterated with less expensive vegetable oils. But in seeking certification of a broad class of California consumers, she presented no evidence to suggest that such adulteration could be proven on a classwide basis. To the contrary: the scant evidence she adduced indicates that variations in avocado oil across different lots— based on varying cultivars, harvest time, and geographic origin—yield distinct

1

chemical profiles that inhibit the ability to test for adulteration on a classwide basis. Nor did the plaintiff detail any sort of model that could be used to assess any damages this class of consumers purportedly sustained, instead relying on a short declaration from her counsel that simply described the prices of avocado oil and vegetable oil. It should go without saying that none of this limited evidence could support her burden of proving commonality and predominance under Rules 23(a) and 23(b)(3).

The district court nevertheless certified both a damages and an injunction class. It did so on the basis that the plaintiff's mere *theories* of classwide liability and damages could substitute for actual evidence. The court declared it sufficient that the plaintiff "has adequately *alleged* that the Product was adulterated through a common manufacturing process" (ECF No. 62 (Order) at 5 (emphasis added))— even though plaintiff had presented no evidence of such process—and it reasoned that no "precise" damages model is necessary to secure certification (*id*. at 11).

This Court's intervention is needed to make clear that plaintiffs may secure class certification only through evidence, not mere allegations and theories. That burden is not lessened even where, as here, a district court's standing order imposes significant restraints on class-certification briefing and discovery—an issue that has been a focus of litigation in this Court. *E.g.*, *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 963–65 (9th Cir. 2020). To the extent such an order precludes

2

the adequate development of a record to determine whether class certification is warranted, the solution is to permit the parties to engage in further discovery. The remedy is not to absolve plaintiffs of their evidentiary burden by allowing mere allegations to suffice.

If the district court's approach were followed, a plaintiff could always artfully plead his way into class certification. But class certification is designed to distinguish—through evidence—claims that can be efficiently and fairly tried on a classwide basis from those that cannot. The "rigorous analysis" (*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651, 664 (9th Cir. 2022) (en banc)) on which this Court and the Supreme Court have insisted should not be transformed into a rubber stamp.

This Petition should be granted.

## QUESTIONS PRESENTED

1.      Whether Plaintiff satisfied Rule 23(a)(2)'s commonality requirement or Rule 23(b)(3)'s predominance requirement based on mere allegations that a dispositive issue could be assessed classwide.

2.      Whether Plaintiff satisfied her burden of identifying a model for measuring damages on a classwide basis with a limited attorney's declaration reporting relative prices.

3

## STATEMENT OF THE CASE

### A.    Plaintiff's Claims

On August 27, 2024, *The Washington Post* published an article titled "*Why your avocado oil may be fake and contain other cheap oils.*"  ECF No. 31 (FAC) ¶ 2.  This article reported on two U.C. Davis studies.  *See* ECF No. 36-3 at 32, Hilary S. Green & Selina C. Wang, *First report on quality and purity evaluations of avocado oil sold in the US*, 116 Food Control 107328 (Oct. 2020); ECF No. 36-3 at 21, Green & Wang, *Purity and quality of private labelled avocado oil*, 152 Food Control 109837 (Oct. 2023).  The U.C. Davis studies' authors attempted to compare various avocado oils' chemical profiles against a *proposed* standard profile for avocado oil.  *E.g.*, ECF No. 36-3 at 32-33, 38.  In doing so, the studies' authors detailed the many faults of their proposed chemical standard and explained that avocado oils may differ from that standard for many reasons—including varying "cultivars, harvest time, and geographic origins"—other than adulteration.  ECF No. 36-3 at 23.  The studies' authors expressly acknowledged that there may be significant variation in chemical profiles between different "lot numbers, even when sourced from the same retailer."  ECF No. 36-3 at 51.

Walmart sells Great Value Refined Avocado Oil.  FAC ¶ 5.  Walmart markets that oil as "Refined Avocado Oil," and the back of the label includes an ingredient disclosure, which lists "avocado oil."  *Id.* ¶¶ 17-18.  In the two months that followed

the publication of the Washington Post article, various plaintiffs filed approximately ten lawsuits claiming that such labels were misleading because the products allegedly were not pure avocado oil. *See In re Avocado Oil Mktg. & Sales Pracs. Litig. (In re Avocado Oil)*, MDL No. 3133, Doc. 38 at 2, 7 (J.P.M.L. Nov. 22, 2024). This lawsuit was among them.[1]

Plaintiff-Respondent Edie Golikov filed her initial complaint against Walmart on September 24, 2024. ECF No. 1. Two months later, on December 30, 2024, she filed the operative First Amended Complaint, advancing statutory and common law claims for false and misleading advertising on behalf of a putative class of nationwide consumers and a California consumer subclass. FAC ¶¶ 31, 38-106. Golikov alleges she purchased a bottle of Great Value Avocado Oil from a Walmart store in California on November 14, 2021. *Id.* ¶¶ 6, 26. She contends she and other "reasonable consumers" read the label to represent the "product … contains only

---

[1] Some of those suits—including one against Walmart—were dismissed for failure to state a claim, as plaintiffs failed to "adequately allege[] that the Avocado Oil is anything other than what it claims to be: cold-pressed avocado oil," including because they "fail[ed] to explain the significance of the purportedly high levels of fatty acids [in the testing]." *McConnon v. The Kroger Co.*, 2024 WL 3941340, at *3 n.3 (C.D. Cal. June 21, 2024); *see also Hawkins v. Walmart, Inc.*, No. 24-CV-00374, Doc. 22 (E.D. Cal. Feb. 13, 2025) (same). The remaining suits remain in their early stages. *See Morrison v. Sovena USA, Inc.*, No. 2:24-cv-08144 (C.D. Cal. 2024); *Smith v. Trader Joes Co., et al.*, No. 3:24-cv-06834 (N.D. Cal. 2024); *Dawar v. Sam's W., Inc., et al.*, No. 1:24-cv-09106 (N.D. Ill. 2024); *Valdovinos v. Target Corp.*, No. 2:24-cv-08572 (C.D. Cal. 2024).

avocado oil." *Id.* ¶¶ 19, 42. She alleges that Walmart's avocado oil was "adulterated" with "other oils" and that "[s]he would not have purchased [it at the price she paid] if she had known [it] was contaminated with other oils." *Id.* ¶¶ 5-6, 20, 26.

### B.    The Class Certification Proceedings

Pursuant to the district court's standing order, Golikov had 90 days from service of the initial complaint to move for class certification—that is, until January 8, 2025. ECF No. 8 at 5; ECF No. 13. Because the pleadings remained unsettled and the parties had been unable to undertake any discovery, the parties jointly stipulated to extend the 90-day deadline by at least 60 days. ECF No. 29. The district court denied the stipulated request. ECF No. 30.

Golikov moved for class certification on January 8, 2025. ECF No. 36 ("Mot."). She sought to certify both a Rule 23(b)(3) damages class and a Rule 23(b)(2) injunction class comprising:

> [A]ll persons who, while in the state of California and within the applicable statute of limitations period, purchased Great Value Avocado Oil.

Mot. at 4. In doing so, she presented no evidence suggesting that all bottles of the avocado oil that the putative class members purchased were "adulterated" with other oils. Instead, she simply relied on the U.C. Davis studies—which expressly acknowledged the significant variation among avocado oils, even those sourced

6

from the same retailer—and her attorney's own purported attestation regarding the results of testing on a single bottle of Walmart's avocado oil. Mot. at 3-4; ECF No. 36-3 at 2 ¶¶ 3-4, 5 ¶ 15, 82-83; ECF No. 51 at 1-2. Similarly, in attempting to demonstrate that damages could be assessed classwide, Golikov advanced a "price premium" theory, seeking to recover the difference between the purchase price of Walmart's avocado oil and the value of the supposedly "adulterated" mix of avocado oil and other oils that class members received. Mot. at 15-16. But as support for this model, she relied entirely on a declaration from her counsel, not any sort of expert analysis. *See id.*; ECF No. 36-3 at 1 ¶ 2; 6-19. And her counsel simply reported the prices he had observed on Walmart's website for avocado oil and generic vegetable oil. *Id.*

Under the district court's standing order and applicable local rules, Walmart's opposition was then due on January 17, 2025—that is, just *nine days* later. But on the same day Golikov moved for class certification, a state of emergency was declared in Los Angeles and Ventura Counties due to catastrophic wildfires. In response, the parties filed a joint application for a continuance of the briefing schedule. ECF No. 38. As they explained, discovery had barely commenced, leaving Walmart no opportunity to investigate Golikov's claims, and the nine days allotted to Walmart to oppose class certification did not permit it to adequately investigate Golikov's evidence in support of certification. *Id.* at 5-6. Moreover, the

7

wildfires had caused attorneys for both parties to be displaced from their homes, and the parties would be unable to conduct any depositions due to the "apocalyptic state of emergency." *Id.* at 6.

On January 14, 2025, the district court denied the joint application. Its one-sentence docket entry stated the denial was "for no good cause shown." ECF No. 39.

Walmart accordingly filed its opposition to class certification on January 17, 2025. ECF No. 44 (Opposition). In the nine days available to it—and in the midst of the wildfires—Walmart sought to take depositions of Ms. Golikov and (in his capacity as a fact witness) her counsel, but the parties were unable to schedule depositions. Nevertheless, Walmart's opposition highlighted the deficiencies in Golikov's showing. Walmart explained that Golikov failed to establish commonality or predominance under Rules 23(a)(2) and 23(b)(3) because she failed to show adulteration would be subject to classwide proof. Indeed, the very studies on which she relied in her motion for class certification showed the opposite: retail avocado oil is characterized by "significant differences in the quality and purity" even between different lots of the same product, and there are many different *causes* of such variations, including different harvest time, cultivars, geography, and the oil refining process itself. *Id.* at 6-8. Walmart also explained that Golikov failed to show that her "price premium" model would allow for damages to be measured classwide, as her counsel's declaration regarding the relative prices of avocado oil

and generic vegetable oil did not and could not isolate the price premium attributable to the alleged misrepresentation. *Id.* at 12.

### C.    The District Court's Certification Order

The district court granted Golikov's motion and certified the proposed damages and injunction classes.  Order at 1.  With respect to commonality, the district court dismissed the lack of any evidence suggesting that *all* bottles of avocado oil purchased by the members of the class had been adulterated.  *Id.* at 5. Instead, the court declared that Golikov had met her burden because "she has adequately alleged that the Product was adulterated through a common manufacturing process."  *Id*.  In finding that Golikov had also satisfied the predominance requirement, the court did not address Walmart's arguments that differences in chemical profiles among different bottles of Walmart's avocado oil would require individual minitrials with respect to every purchase. *Id.* at 10-11.  And the court determined that Golikov's "price-premium" damages model satisfied the predominance requirement because a "plaintiff need not have a precise model," summarily rejecting Walmart's arguments regarding the deficiency of her counsel's declaration as mere "quibbles over some of the finer points of Plaintiff's proposed model." *Id.* at 11.

9

D.    **Further District Court Proceedings**

The district court proceedings continue to move toward trial on an expedited schedule. The district court has set a fact discovery cut-off date of June 24, 2025 and a motion cut-off date of July 8, 2025. ECF No. 57. A jury trial is set to commence on September 23, 2025. *Id.*; ECF No. 59.

## STANDARD OF REVIEW

Under Rule 23(f), this Court has "unfettered discretion" to review a certification order based on "any consideration [it] finds persuasive." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 957 (9th Cir. 2005) (internal quotation marks and citation omitted). Among other criteria, this Court considers whether a certification order "presents an unsettled and fundamental issue of law relating to class actions" that will likely evade end-of-case review or is "manifestly erroneous." *Id.* at 959. Because the "decision to permit interlocutory appeal is, at bottom, a discretionary one," any one of these factors may suffice for a case to merit review. *Id.* at 959-60.

## REASONS FOR GRANTING REVIEW

I.    **THE DISTRICT COURT MANIFESTLY ERRED IN CERTIFYING A CLASS BASED ON GOLIKOV'S MERE ALLEGATIONS**

To satisfy Rule 23(a)'s commonality requirement, plaintiffs must demonstrate their claims depend on a "common contention" that "is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*,

564 U.S. at 350.  Satisfying Rule 23(b)(3)'s even more demanding predominance requirement for a damages class requires plaintiffs to show that the common questions are "a significant aspect of the case … [that] can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014).  Absent such evidence, a plaintiff cannot justify invocation of this "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotation marks omitted).

Both showings require actual *evidence*:  the "party seeking class certification" must "affirmatively demonstrate his compliance with the Rule." *Dukes*, 564 U.S. at 350.  Plaintiffs must "actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton*, 573 U.S. at 275.  Here, however, the district court accepted Golikov's bare allegations that Walmart is liable to all class members and failed to consider Walmart's evidence—or indeed Golikov's own evidence—to the contrary.  This manifest error warrants this Court's immediate intervention.

### A.    The District Court Manifestly Erred In Concluding That Golikov Established Commonality Through Allegations Alone

Each of Golikov's claims turns on her ability to present classwide evidence of actual falsity—*i.e.*, that the Walmart product labeled "avocado oil" is actually adulterated with other oils. *See White v. Symetra Assigned Benefits Serv. Co.*, 104

11

F.4th 1182, 1192 (9th Cir. 2024) (inquiry into commonality and predominance "begin[s] with the elements of the underlying causes of action") (cleaned up). Yet Golikov did not marshal common proof demonstrating that *all* bottles of the Walmart avocado oil purchased by members of the putative class were adulterated with other oils. Because there is "no evidence that the entire class was subject to the same [unlawful] practice, there is no question common to the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).

None of Golikov's evidence suggested classwide adulteration. Golikov relied principally on the U.C. Davis studies. But those studies cut *against* certification because they expressly acknowledge "significant differences in the quality and purity of oil from different lot numbers, *even when sourced from the same retailer*." ECF No. 36-3 at 51 (emphasis added). Indeed, the studies further indicated that causes other than adulteration can lead to varying test results from bottle to bottle and lot to lot, both because of natural variables (such as avocado cultivars, harvest time, and geographic origins) as well as because of variances in the refining process itself. *Id.* at 23, 30, 34, 38. Thus, Golikov's primary evidence in support of certification shows that there is likely significant variation among bottles, which could lead to varying conclusions regarding whether any given bottle was adulterated (assuming any were). This is hardly a case in which the crux of the plaintiffs' claims can be proven "in one stroke." *Dukes*, 564 U.S. at 350.

12

Golikov's other evidence—an attorney declaration briefly describing a purported lab test of a single bottle of Walmart's avocado oil commissioned by Golikov's counsel—offered no indication this issue could be resolved classwide. ECF No. 36-3 at 5 ¶ 15; 82-83. Even assuming this supposed testing showed adulteration of the tested bottle, it provided no basis whatsoever for extrapolating that result to any other bottles of avocado oil. And the U.C. Davis studies offered up by Golikov affirmatively indicate that such test results cannot be extrapolated to other bottles.

Walmart's evidence further confirms that the adulteration alleged by Golikov cannot be proven on a classwide basis. Walmart submitted a declaration from its avocado oil supplier, which tested oil from the very same lot as the single bottle Golikov's counsel had tested. The supplier's testing produced dramatically different results that were consistent with purity, not adulteration. ECF No. 44-2 ¶¶ 10-11. If Golikov's testing was valid at all, the supplier's testing thus confirmed the high degree of variation even within lots. In other words, even if some bottles of Walmart's avocado oil were adulterated, the record provided no basis for concluding that it could be determined classwide whether *all* bottles purchased in California during the class period were.

In short, there is no evidence to support (and substantial evidence to reject) the proposition that adulteration is a question common to the class. So the district

13

court relied on Golikov's bare allegations to conclude that commonality is satisfied: The court deemed it sufficient that Golikov had "adequately alleged that the Product was adulterated through a common manufacturing process." Order at 5. That was manifest error. It is well established that plaintiffs must provide actual evidentiary proof to support a class certification motion. *Halliburton*, 573 U.S. at 275. Indeed, this Court routinely holds commonality is not satisfied where plaintiffs fail to produce sufficient "evidence" of questions common to the class. *See, e.g.*, *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019); *Davidson*, 968 F.3d at 967. Here, Golikov presented no evidence whatsoever of any "common manufacturing process," much less evidence indicating that such a process would yield proof of adulteration common to the class, and her mere allegations of such a process cannot serve as the basis for certifying a class. Had the district court fulfilled its duty to "rigorously analyze whether plaintiffs have produced sufficient evidence that they have met class certification requirements," it would have been compelled to deny class certification in this case. *Black Lives Matter L.A. v. City of L.A.*, 113 F.4th 1249, 1254 (9th Cir. 2024).

### B. The District Court Also Manifestly Erred In Concluding Golikov Established Predominance

For the same reasons, the district court manifestly erred in finding that Golikov satisfied the even higher standard for predominance. Rule 23(b)(3) requires "that the district court determine after rigorous analysis whether the common

question predominates over any individual questions, including individualized questions about injury or entitlement to damages." *Olean*, 31 F.4th at 669. While overlapping with the commonality inquiry, the predominance requirement "is far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). Class certification is improper if a defendant "rais[es] the spectre of class-member-by-class-member adjudication" through "sufficient evidence that … individualized issues bar recovery on at least some claims[.]" *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023).

Golikov did not come close to meeting her heavy burden here. Much like the defendant in *Van*, Walmart "invoked an individualized issue"—that some class members suffered no injury because the avocado oil they purchased was not adulterated—and "provided evidence that at least some class members lack meritorious claims," as the declaration from Walmart's supplier confirmed. *Id.* at 1069. It "thus summon[ed] the spectre of class-member-by-class-member adjudication." *Id.* None of Golikov's limited evidence could support a contrary conclusion. *See supra* pp. 11-14. If anything, Golikov's evidence only confirms that class adjudication is likely to devolve into batch-by-batch litigation over the adulteration of the oil in particular bottles as those oils' chemical characteristics vary by cultivar, harvest time, and geographic origin. *See* ECF No. 36-3 at 21, Green & Wang, *Purity and quality of private labelled avocado oil*, 152 Food Control 109837

(Oct. 2023). In such circumstances, predominance is not satisfied. *Van*, 61 F.4th at 1069; *see also*, *e.g.*, *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023) (reversing class certification because individual issues about injury or entitlement to damages predominate over common questions); *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022) (similar); *Davidson*, 968 F.3d at 967 (similar).

Yet the district court did not even directly address this critical individualized issue in finding predominance. *See* Order at 10. It appeared to presume that its prior conclusion that Golikov's "allegations" of a common manufacturing process satisfied the commonality requirement likewise eliminated the spectre of individualized litigation on whether a given bottle of avocado oil was adulterated. *See id.* at 5. That, again, was manifest error: a plaintiff must meet her burden with evidence, not unsupported allegations. *E.g.*, *Halliburton*, 573 U.S. at 275.

## C. The District Court's Errors Implicate Significant Constitutional Standing Concerns

The district court's errors in failing to hold Golikov to her burden are all the more significant given the underlying constitutional issues at stake. "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). Here, Golikov has presented no evidence that could demonstrate all class members have the requisite standing. To the contrary, the record evidence

16

indicates that at least a significant portion of the class purchased avocado oil that was not adulterated. *E.g.*, ECF No. 44-2 ¶¶ 10-11. And class members who purchased avocado oil that was, in fact, pure avocado oil could not have suffered the "concrete harm" Article III demands (*TransUnion*, 594 U.S. at 431-32): they would not have been exposed to any misrepresentation, and they would have received exactly what they paid for.

This Court has not yet definitively resolved whether "every class member must demonstrate standing before a court certifies a class." *Van*, 61 F.4th at 1068 n.12 (citation omitted). The Supreme Court, however, recently granted certiorari to address that important question. *See Lab'y Corp. of Am. v. David*, No. 24-304, __ S. Ct. __, 2025 WL 288305, at *1 (Jan. 24, 2025) (granting certiorari to address whether damages class may be certified "when some members of the proposed class lack any Article III injury."). But if left to stand, the district court's decision would offer plaintiffs an easy end-run around any constitutional requirement of showing class-wide injury. Such a requirement would be meaningless if a plaintiff could simply *allege* that a defendant's supposed violation affected all class members.

## II. THE DISTRICT COURT'S ACCEPTANCE OF GOLIKOV'S DAMAGES MODEL WAS MANIFEST ERROR

Even if Golikov had presented evidence showing that the adulteration issue could be assessed classwide, she still would not have satisfied Rule 23(b)(3)'s predominance requirement. A plaintiff seeking to certify a damages class must

prove that "damages are capable of measurement on a classwide basis" using a model that measures "only those damages attributable" to the plaintiff's theory of class liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). For two interrelated reasons, the district court manifestly erred in concluding that Golikov met that burden: (1) her damages "model" was premised on a simple comparison between prices for avocado oil and vegetable oil, which bore no relationship to her claims concerning adulterated avocado oil; and (2) her attorney's conclusory declaration provided none of the details necessary for a "model" that supposedly calculates classwide "price premium" damages.

### A.    Golikov's Damages Model Bears No Relationship To Her Liability Theory

A district court must determine whether a "model purporting to serve as evidence of damages" actually "measure[s] only those damages attributable" to a plaintiff's theory of class liability. *Comcast*, 569 U.S. at 35. Otherwise, the model "cannot possibly establish that damages are susceptible of measurement across the entire class." *Id.* In other words, a damages class may not be certified under Rule 23(b)(3) "where an expert's damages model is untethered from plaintiff's theory of liability such that it has no possibility of demonstrating the amount of damages in a particular case." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1027 (9th Cir. 2024), *cert. denied*, No. 24-576, 2025 WL 663695 (U.S. Mar. 3, 2025).

That is the case here. The district court approved Golikov's "price premium" model (Order at 11), which purported to measure the "price premium that Walmart was able to charge consumers" due to its supposedly adulterated avocado oil (Mot. at 15). But the only description of the model that Golikov provided—in her brief, not in any evidentiary submission—is an assertion that she will "compar[e] the price of Walmart's mislabeled Great Value Avocado Oil to that of Walmart's inferior, cheaper cooking oil blend (vegetable oil)[.]" Mot. at 15-16. And the only supporting evidence she supplied was her attorney's declaration that Walmart's avocado oil cost more than its vegetable oil on Walmart's website in December 2024. ECF No. 36-3 at 1 ¶ 2.

This meager showing cannot possibly satisfy Golikov's burden under *Comcast*. Golikov's theory of liability is that Walmart misrepresented "adulterated" avocado oil as pure avocado oil. *E.g.*, FAC ¶¶ 5-6, 20, 26. But simply comparing the prices of avocado oil and vegetable oil cannot show the relevant price premium— that is, the difference between what the price for the avocado oil would have been if the purported adulteration had been disclosed and what consumers actually paid. Golikov presented no evidence whatsoever suggesting that consumers would have paid the same price for adulterated avocado oil that they did for ordinary vegetable oil. Her damages model is thus "untethered" from her theory of liability. *Lytle*, 114 F.4th at 1027.

19

The district court did not address this fundamental issue at all. Instead, it dismissed Walmart's arguments as mere "quibbles," declaring that "[a]t the class certification stage, the plaintiff need not have a precise model." Order at 11. But *Comcast* demands far more than what Golikov offered here. At the very least, a plaintiff must demonstrate that her proposed damages model, if viable, would measure the correct thing. *Lytle*, 114 F.4th at 1031. Golikov did not even clear that threshold bar.

### B.     Golikov Failed To Adequately Develop Her Damages Model

Even assuming ordinary vegetable oil is the proper comparator for a price premium damages model—and it is not—Golikov's proposed "model" does not satisfy her burden. A damages model must be rejected if it is "too underdeveloped to satisfy the 'rigorous analysis' required under FRCP 23." *Lytle*, 114 F.4th at 1031. "Merely gesturing at a model or describing a general method will not suffice to meet this standard." *Id.* at 1032. Rather, a plaintiff "must chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case." *Id*.

Here, Golikov provided none of the necessary details. Again, her entire description of her "price premium" model was that *her attorney* will "compar[e] the price of Walmart's mislabeled Great Value Avocado Oil to that of Walmart's inferior, cheaper cooking oil blend (vegetable oil)" to determine the price premium

20

for supposedly adulterated avocado oil. Mot. at 15-16. But as courts have consistently recognized, a price premium damages model must account for the multitude of factors that can affect the market price of a given product and isolate the effect of any purported misrepresentation. *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1119 (C.D. Cal. 2015) (noting the presence of "other factors in a functioning marketplace"); *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *7-8 (S.D.N.Y. Aug. 5, 2010) (rejecting expert opinion and damages model where expert "readily admits that there may be additional factors that he has not yet considered"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413 (S.D.N.Y. 2015) (similar). This requires expert economic analysis of statistical evidence. Golikov offered no description of a statistical analysis that would isolate a price premium attributable to Walmart's alleged misrepresentation, nor any evidence that such an analysis is even *possible* in the circumstances of this case.

While the district court asserted that Golikov had "submit[ted] expert testimony setting forth a proposed methodology for calculating that premium" (Order at 11), that was clearly erroneous. Golikov's only expert submission—a purported survey on consumer deception—says nothing about any damages model. *See* ECF No 36-2. Rather, Golikov's price premium damages model relied entirely on her own counsel's declaration. *See* Mot. at 15-16; ECF No. 36-3 at 1 ¶ 2. And unsurprisingly, her counsel did not make any claim that he is qualified to conduct

21

the sort of statistical analysis courts ordinarily demand to support a price premium model. *E.g.*, *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d at 1119-20.

In recent years, this Court has repeatedly wrestled with difficult questions regarding the standard of admissibility applied to expert testimony at class certification and how well-developed an expert's model must be to satisfy *Comcast*. *E.g.*, *Lytle*, 114 F.4th at 1030; *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017); *Ward v. Apple Inc.*, 784 F. App'x 539, 540 (9th Cir. 2019). A plaintiff cannot elide these issues by eschewing expert testimony altogether and relying on conclusory assertions that a damages calculation will be possible. Yet that is precisely what the district court allowed this plaintiff to do. This Court should make clear that plaintiffs cannot so easily evade their obligations under Rule 23(b)(3).

## III. CONSTRAINTS ON DISCOVERY CANNOT RELIEVE A PLAINTIFF OF HER EVIDENTIARY BURDEN

This Court's intervention is particularly necessary here in order to affirm that a district court's desire to resolve class certification issues efficiently cannot alter a plaintiff's burden to *prove* class treatment is appropriate. The class certification process is undeniably complex, and district courts have sometimes adopted rules and practices intended to expedite the process. This Court has repeatedly been called on to assess the application of such rules. *See, e.g.*, *Davidson*, 968 F.3d at 963; *Williams v. Warner Music Grp. Corp.*, 848 F. App'x 284, 285 (9th Cir. 2021); *Balser v. Hain*

*Celestial Grp., Inc.*, 640 F. App'x 694, 696–97 (9th Cir. 2016); *Archila v. KFC U.S. Props., Inc.*, 420 F. App'x 667, 668 (9th Cir. 2011). As it has recognized, district courts have substantial discretion in managing their dockets. *E.g.*, *Davidson*, 968 F.3d at 963. But that discretion does not extend to the creation of exceptions to the requirements of Rule 23. *Cf. ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018) (concluding application of local rule's "bright-line" 90-day deadline to move for class certification was "incompatible" with Rule 23).

Here, after imposing a 90-day deadline on the parties through its standing order, the district court twice denied the parties' joint requests to extend deadlines related to class certification. The court did so despite wildfires that displaced counsel on both sides from their homes and prevented any depositions. That ruling may have prevented Golikov from presenting additional evidence in support of her certification motion; it undoubtedly prevented Walmart from obtaining much of the evidence on which it would have relied in opposing that motion.

But black letter law demands that a plaintiff provide evidence to support class certification, no matter the constraints on discovery. *See supra* pp. 10-16. Without such evidence, the substantial deviation from ordinary litigation that a class action represents—and the attendant costs and risks that come with it—cannot be justified. *Comcast*, 569 U.S. at 33. This Court should make clear that, whatever district courts' interests in efficiency, the requirements of class certification cannot be relaxed to

23

accommodate a more expedited process. The district court disregarded these basic requirements here.

**<u>CONCLUSION</u>**

For the foregoing reasons, this Court should grant review of the district court's class certification order.

DATED this 13th day of March, 2025.

DAVIS WRIGHT TREMAINE LLP

By: <u>/s/ James R. Sigel_____</u>

James R. Sigel
Jacob M. Harper
Joseph Elie-Meyers
Daniel H. Leigh
Heather F. Canner
350 S. Grand Avenue, 27th Floor
Los Angeles, California 90071

*Attorneys for Defendant-Petitioner
Walmart, Inc.*

24

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     I hereby certify that foregoing petition complies with the requirements of Ninth Circuit Rule 5-2(b), namely that the total word count of this document, excepting those parts excluded by Fed. R. App. P. 28(f), is 5,532 words, which, when divided by 280 as provided by Circuit Rule 32-3, yields a page count less than or equal to twenty pages as required by Circuit Rule 5-2(b).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 pt. Times New Roman.

Dated: March 13, 2025

By:  <u>/s/ James R. Sigel</u>
          James R. Sigel

25

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Plaintiff's Motion for Class Certification [DE 36]

## I.  INTRODUCTION

On December 30, 2024, Eddie Golikov ("Plaintiff") filed the operative First Amended Class Action Complaint ("FAC") against Walmart Inc. ("Defendant"), asserting claims for violations of California's False Advertising Law ("FAL"), Consumer Legal Remedies Act ("CLRA"), and Unfair Competition Law ("UCL"), as well as breach of express warranty, negligent misrepresentation, intentional misrepresentation, and quasi-contract. (ECF No. 31.) She thereby seeks damages, as well as an injunction prohibiting Defendant from further deceptive conduct.

Presently before the Court is Plaintiff's Motion to Certify Class. (ECF No. 36.) For the following reasons, the Court **GRANTS** the Motion.

## II.  FACTUAL BACKGROUND

Plaintiffs allege the following in the FAC:

Avocado oil has become a popular culinary product due to its mild flavor, nutritional benefits, and ease of use in cooking. Consumers are often willing to pay a premium for avocado oil, particularly if it has not been adulterated with other, less desirable cooking oils. However, avocado oil is significantly more expensive to produce. As a result, manufacturers and retailers have an incentive to increase their profits by selling adulterated avocado oil that has been blended with poor quality or cheaper oils to unknowing customers. Indeed, since at least 2020, the industry has been aware of issues with adulteration.

Defendant is a retail chain that markets, distributes, and sells Great Value Avocado Oil (the "Product"). The front-label states, "Refined Avocado Oil" and includes graphics of avocados. The back-label lists "Avocado Oil" as the sole ingredient contained.

(35 of 49), Page 35 of 49    Case: 25-1685, 03/13/2025, DktEntry: 1.1, Page 35 of 49
Case 2:24-cv-08211-RGK-MAR    Document 62    Filed 02/27/25    Page 2 of 13    Page ID
#:898

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |



Plaintiff, a resident of Tarzana, California, purchased the Product on November 14, 2021. Plaintiff read and relied on the labels before making the purchase believing that the Product contained unadulterated avocado oil without any other ingredients. Plaintiff would not have purchased the Product or would have paid less for it if the she knew or believed that other ingredients were present.

But in October of 2023, almost two years after Plaintiff purchased and used the Product, researchers at the University of California, Davis ("UC Davis") published a scientific study concluding that the Product was likely adulterated. The researchers analyzed a few bottles of the Product produced around 2020 or 2021 and found that their fatty acid and sterol profiles were consistent with high levels of other cheaper oils. Though the researchers acknowledged that there were possible alternative explanations for these results, they ultimately concluded that the Product was likely adulterated, and thus, its labeling was inaccurate.

Defendant knew, or reasonably should known that the Product was adulterated. Given the widespread awareness of adulteration in the industry, Defendant tested, or reasonably should have tested the Product for adulteration. In so doing, it learned, or reasonably should have learned that the Product was adulterated, yet failed to address the problem.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|----------|----------------------|--|------|-------------------|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | | |

## III.   JUDICIAL STANDARD

As a threshold to class certification, the proposed class must satisfy four prerequisites under Federal Rule of Civil Procedure ("Rule") 23(a). First, the class must be so numerous that joinder of all members individually is impracticable. Fed. R. Civ. P. 23(a)(1). Second, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class as a whole. Fed. R. Civ. P. 23(a)(3). Finally, the proposed class representatives and proposed class counsel must be able to fairly and adequately protect the interests of all members of the class. Fed. R. Civ. P. 23(a)(4).

If all four prerequisites of Rule 23(a) are satisfied, a court must then determine whether to certify the class under one of the three subsections of Rule 23(b). Rule 23(b) sets forth three types of class actions: (1) prejudice class actions, when prosecuting separate actions would risk prejudice through inconsistent rulings or the impairment of other members' interests; (2) injunction class actions, when the class seeks injunctive relief as a whole; and (3) damages class actions, when common questions of law or fact that predominate over individual issues, and a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b).

A district court should permit a class action to proceed only if the court "is satisfied, after a rigorous analysis," that the Rule 23 prerequisites have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). However, while some inquiry into the substance of a case may be necessary, it is improper to decide on the merits at the class certification stage. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003). In analyzing whether the proposed class meets the requirements for certification, a court must take the substantive allegations of the complaint as true and may consider extrinsic evidence submitted by the parties to holistically evaluate the merits of class certification. *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

## IV.   DISCUSSION

The crux of Plaintiff's claims is that Defendant falsely advertised that the Product contained only avocado oil, but was in fact, adulterated with cheaper oils. Plaintiff thereby contends that anyone who purchased the Product in the state of California within the applicable statute of limitations period may assert the same claims as her. Accordingly, she seeks to certify a class comprising "all persons who, while in the state of California and within the applicable statute of limitations period, purchased [the Product]." (Mot. at 4.) And because she seeks both injunctive relief and damages, she seeks to divide the class into two subclasses: a Rule 23(b)(2) injunction class and a Rule 23(b)(3) damages class. The Court first considers whether Plaintiff's proposed class satisfies the requirements of Rule 23(a).

(37 of 49), Page 37 of 49      Case: 25-1685, 03/13/2025, DktEntry: 1.1, Page 37 of 49
Case 2:24-cv-08211-RGK-MAR    Document 62    Filed 02/27/25    Page 4 of 13    Page ID
#:900

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | |

**A.**     **Rule 23(a)**

1.     *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed number that satisfies the numerosity requirement, "[t]he Ninth Circuit has required at least fifteen members to certify a class, and classes of at least forty members are usually found to have satisfied the numerosity requirement." *Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 232 (C.D. Cal. 2018) (citing *Harik v. Cal. Teachers Ass'n*, 326 F.3d 1042, 1051 (9th Cir. 2003)).

According to Plaintiff, Defendant has sold the Product in more than two hundred stores across California for several years. Thus, it can be reasonably inferred that at least fifteen, if not forty, people purchased the Product and would therefore belong to the proposed class. Accordingly, Plaintiff argues that the numerosity requirement is satisfied.

Defendant disagrees, arguing that Plaintiff fails to provide evidence that the Product was adulterated. And absent that evidence, the only reasonable conclusion is that no one has any actionable claims against Defendant, and thus, the proposed class would have zero members. Defendant misses the mark. Defendant's argument is, in essence, that Plaintiff must establish liability before seeking class certification. This is plainly incorrect, as the ultimate question of liability is not an issue at the class certification stage. *Staton*, 327 F.3d at 954.

Defendant alternatively argues that even if the Product was adulterated, Plaintiff has failed to provide evidence establishing the number of people who purchased it. Indeed, Plaintiff does not provide any figures or estimates as to the number of people who purchased the Product. Instead, Plaintiff simply infers that at least fifteen people purchased the Product based on the number of Defendant's stores and the length of time the Product was sold. However, numerous courts have recognized that "common-sense assumptions and reasonable inferences" like these are sufficient to establish numerosity. *The Civil Rights Educ. & Enforcement Ctr. v. RLJ Lodging Tr.*, 2016 WL 314400, at *6 (N.D. Cal. 2016), *aff'd*, 867 F.3d 1093 (9th Cir. 2017)) (collecting cases). And it is reasonable to infer from these facts that the proposed class would have at least fifteen members, if not significantly more.

To be sure, Defendant argues that at least one court in this district has held that "[a] plaintiff cannot satisfy numerosity with mere 'common-sense [assumptions] and reasonable inferences.'" (Opp'n at 14–15, ECF No. 44 (citing *Wang v. Defense Tax Grp. Inc.*, 2020 WL 6204578, at *2 (C.D. Cal. Aug. 10, 2020)).) However, Defendant mischaracterizes that court's holding. In *Wang*, the court simply found that the plaintiff relied on baseless assumptions and speculations, thereby falling short of common sense and reason. *Wang*, 2020 WL 6204578, at *2 ("[T]his case is nothing like those Plaintiff cites applying 'common sense' and 'reasonable inferences' to conclude that the requirement of numerosity is met."). It

(38 of 49), Page 38 of 49    Case: 25-1685, 03/13/2025, DktEntry: 1.1, Page 38 of 49
Case 2:24-cv-08211-RGK-MAR    Document 62    Filed 02/27/25    Page 5 of 13    Page ID
#:901

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | | |

did not, as Defendant suggests, state that common sense assumptions and reasonable inferences are never sufficient.

Accordingly, the Court finds that the numerosity requirement is satisfied.

      2.    *Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirements of Rule 23(a)(2) are "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Not *all* questions of fact or law need be common to the class; the existence of shared legal issues with divergent factual predicates or a common core of salient facts coupled with disparate legal remedies is sufficient to satisfy commonality. *Id.* Rather, members of a putative class must share a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. In short, the requirements for finding commonality are minimal. *Hanlon*, 150 F.3d at 1020.

Plaintiff argues that the commonality requirement is satisfied because Defendant's liability to each class member turns on the same contention: whether the Product's labeling is likely to mislead a reasonable consumer into believing that avocado oil is the only cooking oil in the Product. And according to Plaintiff, this contention is common among all class members and would not require individual determinations, particularly given that consumer protection claims apply a "reasonable consumer" standard that does not "require the court to investigate class members' individual interaction with the product." *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 290–91 (N.D. Cal. 2017) (internal quotations omitted).

Defendant disagrees, arguing that the commonality requirement is not satisfied because Plaintiff does not "prove" common adulteration, deception, and reliance. (Opp'n at 4–8.) Defendant misses the mark yet again.

At the class certification stage, Plaintiff need only present common questions of fact or law that are "*capable* of classwide resolution." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (emphasis added). Plaintiff need not prove that these questions of fact or law will have common resolutions in the class's favor; she need only establish that they may have common resolutions in the class's favor. *See id.* (holding that a plaintiff asserting class claims of employer misconduct need not provide proof of a company-wide policy at the class certification stage). Plaintiff has met this burden, as she has adequately alleged that the Product was adulterated through a common manufacturing process, a reasonable person would be deceived by the Product's labeling, and a reasonable person would have relied on the deceptive labeling to her detriment.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

Accordingly, the Court finds the commonality requirement satisfied.

     3.    *Typicality*

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class they seek to represent. Fed. R. Civ. P. 23(a)(3). This does not require that the claims of the representative parties be identical to the claims of the proposed class members. *Hanlon*, 150 F.3d at 1020. Typicality requires only that "representative claims . . . [be] reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* at 1020. Rather, typicality focuses on whether the unnamed class members have injuries similar to those of the named plaintiffs, and whether those injuries result from the same injurious course of conduct. *Armstrong v. Davis*, 275 F.3d 849, 869 (2001). In practice, the commonality and typicality requirements of Rule 23 "tend to merge." *Gen. Tel. Co. of Sw. v. Falcon.*, 457 U.S. 147, 158 n.13 (1982).

Plaintiff argues that the typicality requirement is satisfied because Plaintiff asserts the same claims as the proposed class—namely, for damages and injunctive relief against Defendant for purchasing falsely labeled adulterated avocado oil. Defendant disagrees, arguing that the typicality requirement is not satisfied because Plaintiff has not provided sufficient evidence of common adulteration so as to establish that her claims would be typical of her class. Defendant's argument appears to be a slight rephrasing of its commonality argument, which as explained above, fails because Plaintiff has adequately alleged that the Product was adulterated through a common manufacturing process. While it remains to be seen whether Plaintiff's common adulteration theory is correct, Plaintiff need not prove the theory at this stage.

Accordingly, the Court finds the typicality requirement satisfied.

     4.    *Adequacy*

Rule 23(a)(4) requires the Court to determine if the named plaintiffs and proposed class counsel will fairly and adequately protect the interests of the entire class. The adequacy requirement is satisfied if the named plaintiffs and their counsel (1) will prosecute the action vigorously on behalf of the class, and (2) do not have interests adverse to unnamed class members. *Hanlon*, 150 F.3d at 1020. "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

Plaintiff argues that the adequacy requirement is satisfied because Plaintiff and her counsel assert that they have no conflicts of interest. (Golikov Decl. ¶ 5, ECF No. 36-1; Lyon Decl. ¶ 14, ECF No. 36-3.) Defendant disagrees, arguing that: (1) Plaintiff's assertions are insufficient; (2) Plaintiff failed to comply with discovery requests; and (3) Plaintiff's counsel violated the Local Rules by failing to meet and confer. Each of Defendant's arguments fail.

(40 of 49), Page 40 of 49    Case: 25-1685, 03/13/2025, DktEntry: 1.1, Page 40 of 49
Case 2:24-cv-08211-RGK-MAR    Document 62    Filed 02/27/25    Page 7 of 13    Page ID
#:903

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | | |

Defendant first argues that Plaintiff and her counsel's assertions are insufficient because, according to Defendant, a court in the Western District of Washington held that there is "no adequacy where plaintiffs 'baldly assert' lack of conflicts." (Opp'n at 17 (quoting *Angulo v. Providence Health & Servs. – Wash.*, 2024 WL 3744258, at *11 (W.D. Wash. Aug. 9, 2024)).) But there are two issues with this argument. First, a lone district court case from the Western District of Washington is of little persuasive authority. Second, and perhaps most importantly, Defendant conveniently omits that the plaintiffs' assertions in that case were "baseless" because they "d[id] not cite evidence." *Angulo*, 2024 WL 3744258, at *11. Here, Plaintiff provided evidence through two declarations. Defendant does not argue or cite any authority suggesting that these declarations are in any way insufficient.

Defendant next argues that Plaintiff is inadequate for failing to comply with discovery requests. According to Defendant, Plaintiff "refus[ed] to appear for a properly noticed deposition [] without serving objections or obtaining a protective order." (Opp'n at 17–18.) Defendant argues that this refusal not only demonstrates Plaintiff's inadequacy, but also caused substantial prejudice that independently mandates denial of her Motion. *See Kandel v. Brother Intern. Corp.*, 264 F.R.D. 630, 634 (C.D. Cal. 2010) ("[F]ailure to comply with . . . discovery requests . . . suggest[s] that the class representative is inadequate."); *ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018) (finding class certification inappropriate when defendant is deprived of opportunity to conduct pre-certification discovery). However, Defendant appears to grossly misrepresent the facts. Defendant gave only three business days' notice of Plaintiff's deposition. (Andrews Decl. ¶ 3, ECF No. 51-1.) Plaintiff objected, noting that this was insufficient notice. (Andrews Decl., Ex. 2, ECF No. 51-1.[1]) And Defendant not only acknowledged these objections, but seemingly agreed that Plaintiff was not obligated to appear, writing: "We absolutely understand and appreciate the objections. We will work with [counsel] to try to get a more appropriate schedule." (*Id.*)

Defendant finally argues that Plaintiff's counsel is inadequate for failing to meet and confer in compliance with the Local Rules, and this failure also justifies outright denial of the Motion. Under Local Rule 7-3, at least seven days prior to filing a calendared motion, the parties' counsel must meet and confer to discuss the substance of the motion and potential resolution. C.D. Cal. L.R. 7-3. The purpose of this rule is to promote judicial economy and the administration of justice, as it offers the parties an off-ramp by which they may "reach a resolution [and] eliminate[] the necessity for a hearing." *R.H. v. Cnty. of San Bernadino*, 2019 WL 10744836, at *1 (C.D. Cal. Sept. 25, 2019) (quoting *James R. Glidewell Dental Ceramics, Inc. v. Phila. Indem. Ins. Co.*, 2016 WL 9223782, at *1 (C.D. Cal. Sept. 12, 2016)). If the requirements of Local Rule 7-3 are not met, "[t]he Court may decline to consider [the] motion." C.D. Cal. L.R. 7-4; *see also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129

---

[1] Because Plaintiff filed Andrews' declaration and exhibits as a single document, citations to his exhibits share the same ECF number. Plaintiff is advised to comply with the Court's Standing Order requiring each exhibit to be filed as a separate attachment in the future.

(41 of 49), Page 41 of 49    Case: 25-1685, 03/13/2025, DktEntry: 1.1, Page 41 of 49
Case 2:24-cv-08211-RGK-MAR    Document 62    Filed 02/27/25    Page 8 of 13    Page ID
#:904

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | | |

(9th Cir. 2002) ("The district court has considerable latitude in . . . enforcing local rules that place parameters on briefing.").

The Court originally struck Plaintiff's Motion for failing to include a meet and confer certification. Plaintiff refiled the Motion with a statement that the Motion was "made following the conference of counsel . . . which was conducted by email between January 7 and January 9, 2025." (Notice of Mot. at 1.) Defendant contends that this was "fabricated," as no such conferrals ever occurred. (Opp'n at 17.) There appears to be some dispute over the exact timing and substance of the parties' discussions about the Motion. But even if no meet and confer took place between January 7 and January 9, it does not appear that Defendant was prejudiced as a result. Defendant knew from the outset of the case the grounds that Plaintiff would seek class certification, as she stated them in her original Complaint. (Compl. ¶¶ 31–37, ECF No. 1.) And Defendant also knew when the Motion would be filed, as it engaged with discussions with Plaintiff about continuing the class certification deadline. (Stipulation for Extension, ECF No. 29.) To label Plaintiff's counsel inadequate or otherwise deny the Motion under these circumstances would be inappropriate.

Accordingly, the Court finds that the adequacy requirement is satisfied. Having found that each of the Rule 23(a) requirements are satisfied, the Court next considers whether the requirements are met for either a Rule 23(b)(2) injunction subclass or a Rule 23(b)(3) damages subclass.

### B.    Rule 23(b)(2)

A class is proper under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores*, 564 U.S. at 360 (quoting another source). Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* at 360–61.

Plaintiff seeks to certify an injunction subclass that would seek injunctive relief "forbidding [Defendant] from claiming that its avocado oil contains only 'avocado oil,' unless the avocado oil actually is unadulterated and not contaminated with other oils." (Mot. at 17.) Plaintiff argues that this relief is appropriate for an injunction subclass because the requested injunction would apply uniformly to all members. Defendant disagrees, arguing that the injunction would only benefit future purchasers, not the past purchasers belonging to the injunction subclass. Defendant's argument fails.

(42 of 49), Page 42 of 49    Case: 25-1685, 03/13/2025, DktEntry: 1.1, Page 42 of 49
Case 2:24-cv-08211-RGK-MAR    Document 62    Filed 02/27/25    Page 9 of 13    Page ID
#:905

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

Defendant chiefly relies on *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 458 (S.D. Cal. 2014), a consumer protection action in which a district court found that an injunction class could not be certified because it solely comprised past purchasers that would not benefit from an injunction to eliminate deceptive labeling that targeted future purchasers. However, *Algarin* is readily distinguishable. In *Algarin*, the plaintiff alleged that a cosmetic product falsely stated that it lasted more than 24 hours. *Id.* But unlike "products such as dietary supplements where the purported benefits are hard to ascertain or take time to actualize," the duration of a cosmetic product is "readily discern[able]." *Id.* As a result, the class of past purchasers had all become aware that the product was deceptive and "[could] not be further deceived." *Id.* And because the past purchasers could not be further deceived, they could not benefit from an injunction eliminating that deceptive labeling. *Id.* Here, however, there is no indication that the Product's alleged adulteration is immediately discernable. If anything, the Product is similar to a dietary supplement whose benefits are hard to ascertain. Indeed, Plaintiff did not bring this action until she was made aware of potential adulteration by a scientific study years after her purchase. It stands to reason that past purchasers have bought the Product on multiple occasions, and without injunctive relief, may continue to purchase the Product not knowing that they may have been deceived. Thus, this argument fails.

Defendant alternatively argues that injunctive relief is inappropriate because Plaintiff and the proposed subclass primarily seek monetary damages. When a class seeks monetary damages, it may only be certified under Rule 23(b)(2) if the damages sought are "merely incidental to their primary claim for injunctive relief." *Probe v. State Teachers' Retirement Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). However, this is only applicable when the *same* class seeks both monetary damages and injunctive relief. It does not apply when a class is divided into injunctive and damages subclasses, as is the case here. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) (collecting Ninth Circuit cases upholding the certification of two separate classes). Thus, this argument also fails.

Having found the Rule 23(a) requirements satisfied, and both of Defendant's arguments against Rule 23(b)(2) certification unconvincing, the Court **GRANTS** Plaintiff's Motion as to Rule 23(b)(2) certification and certifies the proposed injunction subclass.

### C. Rule 23(b)(3)

A damages class is proper under Rule 23(b)(3) if: (1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

The predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). When evaluating whether common issues predominate, the operative question is whether a putative class is "sufficiently cohesive"

(43 of 49), Page 43 of 49    Case: 25-1685, 03/13/2025, DktEntry: 1.1, Page 43 of 49
Case 2:24-cv-08211-RGK-MAR    Document 62    Filed 02/27/25    Page 10 of 13    Page ID
#:906

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|---|---|---|---|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | |

to merit representative adjudication. *Id.* at 623. Though common issues need not be "dispositive of the litigation," *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 29 (D.D.C. 2001), they must "present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication" so as to justify "handling the dispute on a representative rather than on an individual basis" *Hanlon*, 150 F.3d at 1022.

As for superiority, courts consider several factors to determine whether a class action is superior to other methods of adjudication. These factors include: (1) the interest of each member in "individually controlling the prosecution or defense of separate actions"; (2) the "extent and nature of any litigation concerning the controversy already begun"; (3) the "desirability or undesirability of concentrating the litigation of the claims"; and (4) the "likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). "This list is not exhaustive and other factors may be considered." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id.* (internal citations and quotation marks omitted).

Plaintiff seeks to certify a damages subclass, seeking, among other things, damages and restitution. The Court addresses each predominance and superiority in turn.

          1.     *Predominance*

"In many consumer fraud cases, the crux of each consumer's claim is that a company's mass marketing efforts, common to all consumers, misrepresented the company's product." *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1234 (9th Cir. 2024). These cases are "well suited to class treatment under Rule 23(b)(3)," and "predominance is . . . readily met." *Id.*

As noted above, Defendant's liability to each subclass member turns on the same contention: whether the Product's labeling is likely to mislead a reasonable consumer into believing that avocado oil is the only cooking oil in the Product. The crux of each proposed subclass member's claim is that the Product labeling, common to all consumers, misrepresented the Product. In this manner, Plaintiff appears to bring a prototypical consumer fraud case that would easily meet the predominance requirement.

However, it is not enough that a plaintiff demonstrates that liability turns on common questions of law or fact. A plaintiff must also demonstrate that those common questions are not overshadowed by "individualized calculations" of damages. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017). To do so, a plaintiff must propose a model that identifies the damages stemming from the defendant's alleged wrongdoing that is "susceptible of measurement across the entire class." *Id.* (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). "That some individualized calculations may be

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | | |

necessary does not defeat finding predominance." *Id.* And the "[c]alculations need not be exact." *Comcast*, 569 U.S. at 35.

Plaintiff proposes two damages models: a full refund model and a price-premium model. Defendant argues that neither model meets the predominance standard. The Court addresses each model in turn.

### a. *Full Refund Model*

Plaintiff proposes damages or restitution equal to the full purchase price of the Product, or in other words, the full refund value. Defendant argues that this model is inappropriate because it fails to account for the value of the Product received. Plaintiff disagrees, arguing that while a refund may not be appropriate for restitution, *see, e.g.*, *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014), it may be appropriate for damages. However, Plaintiff does not cite any authority on this point.[2] Thus, this model does not meet the predominance requirement.

### b. *Price-Premium Model*

Plaintiff alternatively proposes damages or restitution based on a price-premium model measured by calculating the price premium that Defendant charged consumers based on the Product's misrepresented label. Plaintiff suggests that this premium may be calculated by comparing the Product price to the price of Defendant's cheaper oils and submits expert testimony setting forth a proposed methodology for calculating that premium. Defendant argues that the expert's methodology is flawed and does not account for factors apart from the alleged mislabeling that may account for the difference in prices. Defendant misses the mark.

At the class certification stage, the plaintiff need not have a precise model; she need only propose one that is "susceptible of measurement across the entire class." *Just Film, Inc. v. Buono*, 847 F.3d at 1121. While Defendant quibbles over some of the finer points of Plaintiff's proposed model, Defendant does not dispute that the model is in fact capable of measuring damages or restitution for the entire subclass. Thus, this model meets the predominance requirement.

---

[2] To be sure, Plaintiff cites this Court's decision in a similar consumer protection case, *Amavizca v. Nutra Mfg., LLC*, 2021 WL 682113, at *12 (C.D. Cal. Jan. 27, 2021), in which the Court allowed a plaintiff to proceed with a full refund model. However, *Amavizca* is distinguishable. In *Amavizca*, the plaintiff alleged that the defendant had falsely labeled a nutritional supplement as containing one compound, when it actually contained a completely different, non-interchangeable compound with different health properties. *Id.* at *1. The plaintiff thereby argued that the product was "worthless," justifying a full refund. *See Lewert v. Boiron, Inc.*, 2014 WL 12626335, at *7 (C.D. Cal. Nov. 5, 2014) (allowing a full refund based on allegations that the flu-relief product at issue was actually a "worthless" "sugar pill"). Here, Plaintiff does not allege that the Product was mislabeled to the same extent. She alleges that the Product did contain avocado oil, just not as much as was promised. She therefore cannot argue that the product was "worthless" so as to justify a full refund in the same manner.

(45 of 49), Page 45 of 49    Case: 25-1685, 03/13/2025, DktEntry: 1.1, Page 45 of 49
Case 2:24-cv-08211-RGK-MAR    Document 62    Filed 02/27/25    Page 12 of 13    Page ID
#:908

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | February 27, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

 2. *Superiority*

Rule 23(b)(3) also requires the Court to assess whether class action is superior to other methods of adjudication. The requirement involves four subfactors: (1) the interest of each member in "individually controlling the prosecution or defense of separate actions"; (2) the "extent and nature of any litigation concerning the controversy already begun"; (3) the "desirability or undesirability of concentrating the litigation of the claims" here; and (4) the "likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Plaintiff argues that each of the four subfactors are met. Defendant disagrees, appearing to argue that only the third subfactor—the desirability of concentrating the litigation—is not met because the claims would require bottle-by-bottle testing, and the proposed subclass members would stand to recover less from a class action than if they pursued full refunds via Defendant's full "money-back guarantee." (Opp'n at 16 n.4.) Neither of Defendant's arguments are convincing.

First, there is no indication that bottle-by-bottle testing would be necessary in this case, because as noted above, Plaintiff's claims turn on allegations of common adulteration through a common process. Proving or disproving Plaintiff's claims would not require testing every single proposed subclass member's bottle as Defendant suggests. Second, there is no indication that the proposed subclass members would be able to get a full refund outside of the litigation. For starters, without the litigation, the vast majority of proposed subclass members presumably might never learn that the Product was potentially adulterated and would never seek a refund. And even if they did seek a refund, there is no indication that they would actually receive one. Defendant does not explain how its return policy would apply to the Product, particularly to proposed subclass members who may have purchased the Product years ago. Thus, Plaintiff meets the superiority requirement.

Having found the Rule 23(a) and Rule 23(b)(3) requirements satisfied, the Court **GRANTS** Plaintiff's Motion as to Rule 23(b)(3) certification and certifies the proposed damages subclass.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | Date | February 27, 2025 |
|----------|------------------------|------|-------------------|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | |

**V.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion. The Court certifies a Rule 23(b)(2) injunction subclass and a Rule 23(b)(3) damages subclass comprising "all persons who, while in the state of California and within the applicable statute of limitations period, purchased [the Product]."

**IT IS SO ORDERED.**

|  | : |
|--|---|
| Initials of Preparer | JRE/sf |

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 350 South Grand Avenue, 27th Floor, Los Angeles, CA 90071.

On March 13, 2025, I served the document described as "**DEFENDANT WALMART'S RESPONSES AND OBJECTIONS TO PLAINTIFF EDIE GOLIKOV'S FIRST SET OF REQUESTS FOR PRODUCTION**" upon the interested parties in this action addressed as follows:

PLEASE SEE ATTACHED SERVICE LIST

\_\_\_ (VIA U.S. MAIL)  I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

  X  (VIA PERSONAL SERVICE) I caused the above-named documents to be served on all other parties to this action by requesting that a messenger from

26

GLOBAL NETWORK LEGAL SUPPORT deliver true copies of the above-named documents enclosed in sealed envelopes.

__X__ (VIA EMAIL) By forwarding a portable document file to the electronic mail address(es) below from electronic mail address linapearmain@dwt.com, at 350 South Grand Avenue, 27th Floor, Los Angeles, CA.

__X__ (VIA OVERNIGHT DELIVERY) by placing a true copy or original in a separate envelope for each addressee named above, with the name and address of the person served shown above on the envelope, sealing the envelope and placing it for collection and delivery by FEDERAL EXPRESS with delivery fees paid or provided for in accordance with ordinary business practices.

Executed on March 13, 2025, Los Angeles, California.

__X__ Federal  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____

LINA PEARMAIN

27

## SERVICE LIST

| | |
|---|---|
| **DOVEL & LUNER, LLP**<br>Richard Lyon<br>Stephen D. Andrews<br>Christin Cho<br>201 Santa Monica Blvd., Suite 600<br>Santa Monica, California 90401<br>Telephone: (310) 656-7066<br>Email: rick@dovel.com<br>Email: stephen@dovel.com<br>Email: christin@dovel.com | *Attorneys for Plaintiff Edie Golikov* |